May it please the court, counsel. This case comes to the court on the granting of a 12b6 motion to dismiss all six counts of the complaint filed by plaintiff Edward Tobey. The standard of review, of course, is de novo as to that issue. There's a cross appeal and a sanction. The standard of review on the cross appeal is abuse of discretion. Mr. Moran, although nobody raised it, there seems to be a younger abstention issue lurking here. I assume there is a state court in Illinois or Florida that is presiding over Tobey's probation, correct? Well, on this record, your honor, it's difficult to determine because of the actions, who is monitoring this case. For example, what I'm specifically referring to is the Florida judge who dismissed the Florida violation of probation and pointed out that the 106 days that Mr. Tobey spent on probation, that he spent in a Florida jail, was the result of procedural complications. As we know, the record reflects that there were at least three court orders months earlier to have Mr. Tobey return from Florida to Illinois. Right. But you aren't saying that there's no court either in Florida or Illinois that he can go to, are you? Well, at some point it becomes a question of resources, both judicial and individual. Mr. Tobey had no idea that he was going to be transported to Florida. And one of the issues here is really why didn't he receive a prompt hearing if they're going to effectively revoke his probation, either here or in Florida? Let me tell you what my bottom line question is about this. I am wondering, and have been since reading the briefs, what business a federal court has intervened in the middle of a state court proceeding or two state court proceedings that have been underway. Do you see where I'm coming from? Well, sort of, but I think that there are no state court proceedings underway since 2015 or 14, I believe. All there is is the probation itself from Florida, which goes until 2020, I believe. Well, then he can go to the court in Florida, right, if they still have his probation. Well, the probation was transferred to Lake County, Illinois under the interstate. Right, so that he can go to the court in Lake County, Illinois. Well, he can't receive any relief for what he's already gone through and what the, one of the... What would that, what does that mean? He can't receive any relief for what he's already gone through? He spent 106 days in a Florida jail in violation of Gagnon v. Scarpelli in 1973 U.S. Supreme Court decision, which said that he was entitled to a full revocation hearing. And Illinois statute, which said that he was entitled to bail. None of that occurred. If you look at the complaint, Mr. Tobey is not brought personally before a judge from the time he was taken to Florida until the time he returned in August 15th of 2013. So it's on as a false arrest or false imprisonment? Well, it's a, it's not really a false arrest case. As, there's some interesting language in a case that was mentioned to your honors earlier in the first argument, which is the Packingham v. North Carolina case. In that particular case, Justice Kennedy says the court has a particular concern for people like Mr. Tobey who have served their time and are now in these probationary situations. And in this particular case, Mr. Tobey was told when he started his probation period that he had to both attend counseling sessions and he had to participate in group counseling and he had to take polygraphs. The important part about that is that if you don't pass the polygraphs, which are administered in-house, you don't ever get out of counseling and you can have your probation revoked. Like Judge Rover, I'm modestly concerned as to how the federal government, the federal courts got involved in this proceeding. And what relief are you seeking? Well, the relief we're seeking is a violation of his due process rights. No, no, that's a charge. What relief do you want? Well, we'd be seeking both injunctive and monetary relief. Injunctive relief for what? Injunctive relief in order to have the hearing guaranteed by Gagnon v. Scarpelli in 1973 and have that hearing take place. Toward what end? Well, I'd like to, toward what end? I think that what we want to do here is say that you can't treat a probationer the way that Mr. Tobey was treated in this particular case. The complaint shows that Mr. Tobey was under the complete control of one of the defendants, his probation officer. That's the nature of probation. But some of the requirements, including her actions, in spite of the fact that there was a judicial order allowing Mr. Tobey to visit his daughter and grandchild in Oregon, suddenly the probation officer who had previously granted requests to travel for Mr. Tobey said she didn't have jurisdiction. Ignoring the plain fact that jurisdiction was transferred to Illinois and it's this sort of ongoing harassment. Well, then that's the state court where he belongs, since it was transferred. I mean, I honestly don't know what role a federal court can play, whether, you know, he's made any effort at all to challenge the supposedly illegal acts of his probation officer and prosecutor in state court. I mean, I'm, yeah. Well, Your Honor, if you believe that we should be remanded to state court on these claims, that's fine. But I don't believe the state court is going to consider federal due process issues. Maybe they will. I don't know. In this particular case, we believed that federal court was the appropriate forum for the nature of the claims that are presented. You know, this was the actions against Mr. Tobey, the timeline shows that the harassment increased noticeably once his attorney made the comment that he was going to FOIA the passing rate on the in-house lie detector test in Lake County. Well, he had failed a number of polygraph exams. He failed to sign a new behavioral agreement as part of the sex offender treatment and probation. He refused to turn off internet access on his phone and said his lawyers told him he could keep it, you know. His lawyer apparently was prescient on Packingham versus North Carolina. But actually, in terms of failing lie detector tests, if you look at Adam Krieger's summary report, one test was inconclusive. Another test, he passed a basic test. And as soon as he had an independent lie detector service administer him a series of lie detector tests in October of 2014 or 13, he passed all of those tests. And thus raising the question, is there some sort of benefit to Lake County by having the sexually registered persons attend counseling, which they pay for at $40, where Mr. Tobey's counseling was doubled as a result of signing this behavioral agreement under duress at the Manatee County Jail in Manatee, Florida. And so that instead of paying $40 a week, his two sessions cost him now $80 a week. Right. Counsel, these are all matters for your client's criminal counsel to take up with his probation agent or the state court. To the extent that you're seeking damages, clearly the claims are time barred. The arrest and detention that you're challenging occurred in the spring of 2013. You didn't file suit until mid-2016, more than a year after the expiration of the two-year statute of limitations. And that was one of the many grounds for the dismissal in this case. In addition, you've sued the probation agent and the state's attorney who were responsible for your client's case here in Illinois. They clearly have immunity from damages liability. Well, we challenge both whether they have immunity under the recent decisions where we're saying that they fabricated and manipulated evidence. They're immune from that charge. What they did here is quasi-judicial and prosecutorial in nature, and that is, it wasn't investigative. The doctrine that you're referring to only refers to investigative misconduct, not prosecutorial misconduct. Well, is it investigative in the situation of probation? Right. You're just wrong on that. They are clearly immune under settled immunity law. And the claims are also obviously time barred. They're late by more than a year, to the extent that your challenges... But we argued equitable estoppel and equitable tolling, as you know. Right. There is no basis for tolling. He knew why he was arrested and for what misconduct because he was told. And his criminal defense attorney was told. And it is information that is available in the public record. And so he was clearly on notice of any possible claim that he had for wrongful arrest and detention at the time of the arrest and detention. And he was brought before courts in both Illinois and in Florida and had full due process. And he was represented by counsel. Judge, he was never brought before a court. These claims are obviously frivolous. Judge, there's a verified complaint that he never was before a judge. The public records contradict that. The public record, Judge, I attempted to obtain a transcript of this. That public record deals with a judge who was never used before under a different case number that was produced without any knowledge or authentication by the other side. Was there consultation with his criminal defense lawyer before the filing of this complaint? Did you consult with the criminal defense lawyer for your client before filing this complaint? He was contacted, yes. Okay. And you were advised of the proceedings in state court? He did not state that he was in court with Mr. Tobey in state court before he was transported to Florida. Did he state he was not in court with him? Did he state either way? He said he was not in court with Mr. Tobey for any removal of Mr. Tobey to Florida. That's as much as I know about that. Did you do a search of the criminal files in Illinois and Florida? I personally went to Lake County and asked for every file under the name of Edward Tobey. Those files that you are referring to, Your Honor, did not and were not produced by the clerk. Now perhaps the explanation could be it's a different case number, but how would I know a different case number? Mr. Tobey didn't know a different case number. And I attempted to order transcripts to see what actually happened. And even though Gagnon v. Scarpelli says that you're supposed to have a full hearing before such a transfer, there is no court-reported record. So on that basis, Judge, our position remains that we would seek to have the order reversed and remanded. Ms. Fitzgerald. May it please the Court, good morning. Counsel, good morning. Your Honor, from your line of questioning of the Plaintiff's Counsel, what I can tell you— You have a lovely, well-modulated voice. Thank you. I'm sorry. And I'm a little hard of hearing, so would you kind of pep it up a little bit? Yes, Your Honor. Thank you. And forgive me for interrupting you, but really, we need to ask you about younger abstention. The defendants didn't raise it. Is that because you thought it didn't apply here? If not, why not? Your Honor, frankly, it did not occur to me. I apologize. Why the plaintiff can't raise all of his claims about wrongful conduct, alleged wrongful conduct by the probation office and the State's attorney and whatever State court presides over his probation at this point, I am, you know, I'm just at a loss at why younger never came up. I apologize, Your Honor. It did not occur to me in this context. I do apologize. However, the court is correct in one case in the sense that while Mr. Tobey's probation terminated in Illinois on March 6th of 2015, he is still on probation in Florida and will be until 2032, which is what a court found when he was recently before the court asking to modify his probation for purposes of engaging in unsupervised contact with minors, and that was part of the record in this case at 11-2, the exhibits to the motion to dismiss at I. So after being told, for example, by State's attorney Nierheim when he corresponded, when Mr. Smith corresponded with State's attorney Nierheim in October of 2015, that he should take his inquiries elsewhere because Illinois had lost jurisdiction over Mr. Tobey because he was at that time off probation, that is what they then did. They then went back to Florida to a Florida court and asked for relief as it related to their desire to have someone supervise contact with a minor. So they were on notice. Can you explain what the Florida court meant when it said that the plaintiff had been prematurely transported to Florida? How did that Florida warrant get issued? I can't explain that. You can't? I can explain that, Your Honor, yes. Oh, okay. So was there some indication from either of the defendants to trigger that process? Yes, Your Honor, I understand. So Mr. Tobey was on probation both on two cases in Florida, one dating, it's an 09-CF and the other is a 10-CF, which, by the way, parenthetically, the plaintiffs know about this because they attached this court's order to their complaint, therefore giving them a reason to go and look at the docket in the 09-CF and 10-CF case to see exactly what happened. If they had, they would have seen that Mr. Tobey's probation monitoring, not his probation, but his probation monitoring for purposes of the Florida cases was transferred to Illinois because he had made a request that he be allowed to live in Illinois. And when he made that request to be allowed to live in Illinois, he signed an application that his monitoring be transferred, and he agreed to waive extradition at that time to be sent back to Florida. So as part of the monitoring process in Illinois, it comes to light in early 2013 at a regular probation check, which the court in Florida had authorized under its own orders, that Mr. Tobey, it comes to light, has Internet service on his phone. Mr. Tobey's complaint pleads this. He doesn't deny it. It comes to their attention that that is the case. Now, naturally, because Ms. Chaboukos is only supervising the probation for Florida, she reports this, presumably, to Lansing. Lansing is, as the court would see in the exhibits to the motion to dismiss, the probation officer that went before a Florida judge on April 18th based on an affidavit that he prepared, and that Florida judge issued a warrant for Tobey's arrest. And it was based upon information discovered by the probation officer acting in Lake County in Illinois and shared because, presumably, because of the compact that Mr. Tobey is allowed to live here under at the good grace of the Florida court, of course that information is going to be shared. The Florida court still monitors him, as the judge in Florida found in December of 15, when they were before the court at that time, asking for relief, again, to have contact with minors on a supervised basis. The court noted in its order, essentially, and by the way, he's on probation until 2032. Right, and the information sharing is not just permissive, it's mandatory, as I understand. Correct. The legal regime under the compact. Yes, it's absolutely mandatory. And Mr. Tobey asked for and was granted the relief that he wanted, which is to live here. And so they were only doing their jobs monitoring him and reporting as required. So it's our position, obviously, that the court properly granted our motion to dismiss and consider the public records, which are the exhibits. These records are available to anyone who would but look for them. And what we know is from the complaint that, again, H1 and H2 to the complaint show that Mr. Tobey and his lawyers were aware of these Florida court proceedings. They go through at great length discussing how he was originally placed on probation in his complaint. And so then it is confounding, and indeed it's our position inexcusable, that they did not discover this Florida warrant, particularly when the order they attached to their complaint says Florida warrant. So for this reason, they should have known to go look for it. When they did, his lawyers would have found the allegations that they plead in their own complaint, which is that not only did he have cell phone service he shouldn't have had, but that he refused to sign a behavioral contract that, for therapeutic purposes, obviously, probation officer Chabucos wanted him to sign, presumably to gain his investment in his treatment. But as a matter of law, she didn't have to ask his permission. There was no permission whatsoever required. She could simply have ordered him to do that because that is what his orders of sex offender probation in his Florida felony case said he must do. He must follow the orders of his probation officer. He did not do that. He resisted doing that. That was the basis for the Florida warrant. That is what got him transported. Now, the court asked counsel a question about whether or not he had spoken to I can tell you at this point I'm turning to my sanctions argument here and the issue that we take with the fact that all of this information that's publicly available from sitting behind a computer to look for it is information that is the picture that should have been completed by Mr. Tobey's attorneys. I understand that his attorneys talked to him, but there is an obligation to do more. Clearly, they have this order here that references a Florida warrant. They should have gone out and found the warrant, and when they did, they would see the allegations they alleged in their complaint as the basis for it. They would also see, had they gone to the clerk's office and not asked to see his criminal file, which they saw, the 09-CF file, had they done a computer search at the Lake County Courthouse or online sitting behind a desk somewhere with Internet service, they would have been able to locate Mr. Tobey's name in the clerk of the circuit court records in Lake County. Once they had done that, they would know that the 13-MR matter that we reference is a publicly available record to anyone. We attach certified public records that reflect that Mr. Nikitas was in open court on two to three occasions with Mr. Tobey before Judge Raymond Collins, which is the proper process for how a foreign extradition warrant is handled in Illinois court. A miscellaneous remedy case is opened, it is processed, and Mr. Tobey was before the court on both of those occasions with Mr. Nikitas. Your Honor, I asked a question of plaintiff's counsel about whether or not he had spoken with Mr. Nikitas. What I can tell you is I did. I spoke with Mr. Nikitas in person in May of the year that we filed this motion for sanctions at the trial court level after we had filed it. I had asked him personally at any time if he had spoken to one of the attorneys or had any written communication with them about the allegations of this complaint because, frankly, it was very peculiar to us to allege a kidnapping narrative from a jail of all places about what had occurred to Mr. Tobey, and Mr. Nikitas told me that no, he had not spoken to either of Mr. Tobey's attorneys in this case at that time. I cannot tell you, obviously, what happened later because I did not ask again. But it is obviously a grave concern to us that these matters- What was the date of that? In May of the year that we filed our motion for sanctions. It was the same month, but after we had filed our motion to dismiss. No, May of what? I believe that's 2016, Your Honor. It's been a year since the filing. So because this picture that was being painted was incomprehensible. It simply did not hold together. It did not make sense. It was not cogent in any way. So we then presumably did what anyone could do, which is go simply to the public records of the Manatee County Clerk of the Circuit Court's Office, and they're exceptionally well laid out. You go to that website and you can click on an icon that sends you to a PDF file that you can then print right then, or if it contains biographical information, wait 30 minutes or so and then be sent a copy by email of that. So once we did that, based upon the orders attached to the complaint of the plaintiff that referenced those 10 and 09 CF felony files, it became very apparent what had happened. And that was that this order had occurred. So respectfully, respecting the district court's observations that the plaintiff had cited some facts, he cited things that were wrong. The parties owe a duty of candor to the tribunal and to do a proper investigation that goes beyond merely talking to one party's client. And what's clear here, it's clear from the argument this morning and it's clear, is that unfortunately that did not occur and it is sanctionable. And considerable resources have been dedicated by our office to defend the lawsuit at the trial level below and here in order to prepare for this argument today. And we would ask the court if it believes it to be appropriate to sanction the plaintiff and his attorneys for use of the court's resources in our time. The public records in Florida also show that Mr. Tobey was represented by counsel there and had process? Absolutely. It showed that Ms. Palchak, that he was taken from the 13 MR records, which are certified public records, show that he was taken by a transport agency from Florida based on its warrant. They coordinated that. They sent that to the sheriff's department in Lake County. The agency brought him to Florida, Florida's agency. And when he arrived on approximately May 1st, he was brought before the court on May 2nd and Ms. Palchak filed her appearance. Not only did she file her appearance, but she later filed a motion that said his appearance was waived, Mr. Tobey's personal appearance was waived for future court appearances. That is part of the public record that we provided. So she would be acting on his behalf, coming to court for him as he directed, but that his appearance physically in court would not be required. And that is also something that she filed with the Florida court. It's file stamped. It's part of the docket on our motion to dismiss the record at 11-2. It's part of all the public record exhibits that we have. So to the extent that Mr. Tobey was not transferred back to Illinois to address the petition to revoke filed by Ms. Stanton alleging these same grounds, it was because the court in Florida initially had issued a no bond warrant and Ms. Palchak did not bring that back to the court to have him returned. The exhibits that we provided show that upon having been notified that Florida was not taking appropriate action, Ms. Stanton then moved forward with extradition proceedings. And the record we provided, because it is a public record, what's held by the state's attorney according to the Nelson v. Kendall case, those are public records. They are available under FOIA proceedings. So we provided them. And it shows a cordial exchange and a coordinated effort to get Mr. Tobey back to Illinois to face his PTR. And then after that, according to the order in H-1 that he attaches to his complaint, would then Mr. Tobey be brought back to Florida as appropriate, as the order states. So Ms. Chaboukos has always been acting as the agent of the Florida courts because of the waiver that was signed by Mr. Tobey. He asked to be part of the compact. He said that he would waive extradition and that he would voluntarily return to Florida as directed. We gave him the process that he agreed not to ask for or accept, but he formaically received it in any event. And he's here in Illinois at the good graces of the Florida court, based upon his desire to be here and his promise that he will obey that court's orders. That is the only court now that has jurisdiction over him. Accordingly, Your Honor, based upon the deficiencies in the complaint filed by the plaintiff and the narrative, we are asking the court respectfully to find that the trial court did not give due consideration to our motion for sanctions and ask that the court sanction Mr. Tobey and his attorneys here in federal court as well as at the trial level. Thank you. Do you think you should be sanctioned for not bringing Younger up? Your Honor, I apologize. Do you think you have in any way given us an awful lot more work as well? Your Honor, we did bring up. I'm not excusing them, but I think you have to, you know, think about what has occurred here. At the trial level, we did in our motion to dismiss reference, and the name escapes me, I apologize, a doctrine which asks for the plaintiff to do as you request, which is to go back and to seek relief from the state court. In granting our motion to dismiss, the trial court did not address that at all. And it is, again, a two-name doctrine. I do apologize, but we did raise it in our motion to dismiss. Rooker-Feldman, it has come to me. Thank you. We did bring up a Rooker-Feldman issue. The court did not address that. I understand that that is a different doctrine, but we did make an effort to recognize that this was not the proper venue as well. The trial court did not address it in the motion to dismiss in granting it. Thank you. Thank you. Did not address it because it didn't, it wasn't germane. Thank you, Your Honor. Thank you. Mr. Moran, you have one minute left. Thank you, Your Honor. Two things. One is that the Florida warrant, if you look at the dates and then look at the factual representations in Adam Krieger's report, which is attached as Exhibit B to the complaint, you'll see that their allegations to Florida were false and they're the same allegations appearing in the repeated petitions for revocation and probation by the state's attorney in this case. The complaint is a verified complaint. The defendant was not present in court. And that's not quite the same thing as counsel saying he was not present in court. Our complaint says that basically the defendant was personally not present in court. Now, Nikitas informed us that he was present, but he didn't say he was present with the defendant. So that's what triggered our actions. The transfer to Florida. You mean he was sitting in the back of the courtroom? Is that what you're saying? That Mr. Nikitas was sitting in the back of the courtroom? No, they produced a document that has a box checked off saying defense counsel was present. And in response to that, I called up and I said, was there a court reporter present for this alleged hearing so I could see whether Mr. Tobey was actually physically present there? And they told me that those are unreported hearings. That's all I know. As far as getting the Florida records go, the state told in their briefs, you'll see that they just say, well, why didn't we FOIA them? We filed this on April 1 of 2016, and based on our calculation with the estoppel issue, we had to file it immediately. And I didn't know that FOIA was an appropriate way to deal with this kind of an issue. So, again, we'll just rely on a verified complaint. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement. And the court will take a brief recess for 10 minutes before calling the next case.